FILED'08 DEC 17 09:26USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE SIMPSON,                          Civ. No. 07-6238-AA
                                         OPINION AND ORDER
            Plaintiff,

      v.

CITY OF ROSEBURG, LARRY
CALDWELL, and HEARTWOOD
RESOURCES, a corporation
of the state of Oregon,

            Defendants.
_____

Kevin T. Lafky
Larry L. Linder
Haley Percell
James S. Davis
Lafky & Lafky
429 Court Street NE
Salem, OR 97301
      Attorneys for plaintiff

Gerald L. Warren
280 Liberty St., SE suite 206
Salem, Oregon 97301
      Attorney for defendants

1    - OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit against the City of Roseburg (the City), Larry Caldwell, and Heartwood Resources after a nuisance abatement action resulted in the permanent disposal of plaintiff's personal property.   Plaintiff alleges a violation of his right against unlawful seizure under the Fourth Amendment and violations of his rights to due process and equal protection under the Fourteenth Amendment.   Specifically, plaintiff claims that defendants seized and disposed of his property without probable cause or notice and an opportunity to be heard, and that defendants did so with an improper motive.   Defendants now move for summary judgment on all claims.   Defendants' motion is granted.

BACKGROUND

On July 30, 2004, plaintiff was cited for violating City nuisance ordinances, codified under Municipal Code §§ 7.04.170 and 7.04.060, prohibiting abandoned vehicles, debris and junk, and building without permits.   The citations were based on the conditions of plaintiff's properties located at 1264 Germond Street and 132 Miller Street in Roseburg.   At the time he received the citations, plaintiff was lodged in the Douglas County Jail.

On September 21, 2004, Judge Kenneth Madison ordered plaintiff to abate the nuisance on each of his properties within thirty days after his release from jail or be subject to a fine of $100.00 per property for each day plaintiff was in violation of the

court's order to abate.

On October 28, 2004, thirty days after plaintiff was released from jail, defendant Larry Caldwell inspected the Germond property. Caldwell is the City's code compliance officer and is responsible for enforcing the Roseburg Municipal Code. During his inspection, Caldwell took photographs and later prepared a memorandum expressing his opinion that the conditions at plaintiff's property had deteriorated. On November 8, 2004, Judge Madison ordered plaintiff to appear before the court on November 18, 2004 to show cause why he should not be held in contempt for failing to abide by the court's order to abate. The record does not reveal whether plaintiff attended this hearing.

On November 29, 2004, Caldwell posted a true copy of a "Notice to Abate a Public Nuisance" in a prominent place on plaintiff's Germond property and provided plaintiff with personal service of the Notice. The Notice cited plaintiff for violating Roseburg Municipal Code § 7.04.030, prohibiting attractive nuisances. The Notice also contained information regarding plaintiff's appeal rights and the text of Municipal Code § 7.04.030.

On December 9, 2004, Judge Madison determined that plaintiff had not complied with the previous order to abate and imposed a daily fine of $100 per property, to accrue until abatement of the nuisance. By February 2, 2005, plaintiff's fine had exceeded $12,000. By letter, Caldwell asked plaintiff for consent to allow

3    - OPINION AND ORDER

the City to enter the premises and abate the nuisance, but plaintiff refused.

On July 18, 2005, Caldwell and plaintiff met at the Germond property. Caldwell told plaintiff that the lot would be cleared of all debris during the abatement process. On August 22, 2005, Caldwell again met with plaintiff and asked for permission to allow the City to abate the nuisance. Plaintiff refused, telling Caldwell that he was trespassing and demanding that he leave.

The City requested bids to abate the nuisance on plaintiff's property in the event such action was authorized. No one responded to the initial bid request. After contact from Caldwell, Heartwood Resources responded to the City's second bid effort. The City accepted the bid, and Heartwood Resources was contracted to abate the nuisance at the Germond property once the City received authorization to do so.

Caldwell prepared an Affidavit and Warrant to the Municipal Court, describing the conditions of the property and the abatement action to be taken if authorized by the Court. The Affidavit stated that "[t]he abatement will consist of removing accumulations of rubbish and debris, abandoned or inoperable vehicle parts, dismantling and removing an accessory structure constructed without a permit, and eliminating attractive nuisances." On September 1, 2005, Judge Madison signed the Administrative Warrant. Specifically, the warrant authorized:

4    - OPINION AND ORDER

> For the purposes of carrying out your duties under
> Roseburg Municipal Code 7.06.040 with any necessary
> assistance of other City employees or contractors at any
> reasonable time to use whatever reasonable force is
> necessary to enter the premises located at 132 S.E.
> Miller and 1264 S.E. Germond, both in the City of
> Roseburg, to remove materials that constitute the
> nuisances.

Declaration of Gerald L. Warren, Ex. 15. Although the warrant
authorized the removal of plaintiff's property, it did not
explicitly authorize the disposal of his property.

Prior to the City's abatement action, Caldwell told plaintiff
to place items of value and personal importance in a pink trailer
located on the Germond property. Caldwell stated that either
plaintiff could remove the trailer from the property or the City
would tow it to a safe place and store it for him.

On September 6, 2005, Heartwood Resources arrived at the
Germond property to abate the nuisance. The pink trailer was no
longer on the property. Caldwell gave Heartwood Resources
instructions to place any personal effects or items of apparent
value that did not fit within the definition of "debris" or
"attractive nuisance" on a flat bed trailer. Heartwood Resources
and Caldwell did so and covered these items with a plastic tarp.

Subsequently, Heartwood Resources discarded or resold items
that it removed from the Germond property. Plaintiff received no
official notice that his property would be disposed of and was
provided no opportunity to reclaim his property. Plaintiff claims
that the City unlawfully disposed of a cabin cruiser boat, three

5    - OPINION AND ORDER

pieces of fence, a washer and dryer, refrigerator, four stainless steel therapy tubs, a stainless steel coil, numerous personal effects, a chicken coop, a water meter, and water line.  The City also hired a towing company to remove several vehicles, but plaintiff does not challenge the seizure of his vehicles, conceding that the towing company had the authority to dispose of them under Municipal Code § 7.04.060 and Or. Rev. Stat. Chap. 819.

On August 31, 2007, plaintiff filed suit, alleging that defendants violated his Fourth Amendment right against unreasonable searches and seizures and his Fourteenth Amendment rights to procedural due process and equal protection under the law.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of

a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  If the moving party shows the absence of a

genuine issue of material fact, the nonmoving party must go beyond

the pleadings and identify facts which show a genuine issue for

trial.  Id. at 324.

Special rules of construction apply to evaluating summary

judgment motions:  1) all reasonable doubts as to the existence of

genuine issues of material fact should be resolved against the

moving party; and 2) all inferences to be drawn from the underlying

facts must be viewed in the light most favorable to the nonmoving

party.  T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

Defendants move for summary judgment on all claims, arguing

that plaintiff fails to establish municipal liability on the part

of the City and that individual defendants are entitled to

qualified immunity.

A.  Municipal Liability

It is well established that § 1983 does not impose liability

against a local government for acts committed solely by its

employees or agents.  Monell v. Dept. of Soc. Servs., 436 U.S. 658,

694 (1978).  "Instead, it is when execution of a government's

policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible

7   - OPINION AND ORDER

under § 1983."  <u>Id.</u>  Thus, the City cannot be held liable for Caldwell's actions; plaintiff must challenge the City's policies governing the disposal of property seized in a nuisance abatement action.

However, the City apparently has no such policy.  While a local government may be liable for a failure to act, <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), plaintiff submits no argument or evidence to show that the City's policies, or lack thereof, amounted to "deliberate indifference" or were the "moving force" behind the violation of plaintiff's constitutional rights.  <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1186, 1193-94 (9th Cir. 2002). Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's claims against the City.

B. Qualified Immunity

Caldwell moves for summary judgment on grounds of qualified immunity, arguing that he took lawful and reasonable action to enforce the City's nuisance ordinances.

Under § 1983, public officials may assert qualified immunity and be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

> The qualified immunity standard gives ample room for
> mistaken judgments by protecting all but the plainly
> incompetent or those who knowingly violate the law.  This
> accommodation  for  reasonable  error  exists  because

8   - OPINION AND ORDER

officials should not err always on the side of caution
because they fear being sued.

Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal citations and
quotation marks omitted).  In deciding whether an official is
entitled to qualified immunity a court must first inquire whether
"[t]aken in the light most favorable to the party asserting the
injury, do the facts show the officer's conduct violated a
constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001).
If so, the court next considers whether the right was "clearly
established" at the time the violation occurred.  Id.

    1. Fourth Amendment Claim

Plaintiff argues that the seizure of his property during the
abatement process violated his rights under the Fourth Amendment.
"It is clear that the warrant requirement of the fourth amendment
applies to entries onto private land to search for and abate
suspected nuisances."  Conner v. City of Santa Anna, 897 F.2d 1487,
1490 (9th Cir. 1990).  Without a warrant or official proceeding,
such as a hearing to challenge the legality of a nuisance citation,
the seizure of property during an abatement action constitutes a
violation of the Fourth Amendment.  Id. at 1490-92.

Here, however, Caldwell obtained a warrant prior to the
abatement action.  Therefore, the seizure of plaintiff's property
complied with the warrant requirement of the Fourth Amendment and
was not unreasonable.  Plaintiff nonetheless challenges the
validity of the seizure.  Plaintiff's arguments are unavailing.

In Schneider v. County of San Diego, 28 F.3d 89 (9th Cir.
1994), the plaintiff owned a 1.4 acre lot where he parked nine
buses, two motorhomes, and two automobiles. Id. at 90.  After
receiving complaints about the vehicles, the County determined that
they constituted a public nuisance. Id.  The County failed to
persuade the plaintiff to remove the vehicles voluntarily and
posted a "NOTICE AND ABATEMENT," informing plaintiff that his
vehicles violated various county nuisance ordinances. Id. at 90-
91.  Plaintiff refused to remove the vehicles, and, ultimately the
County seized the vehicles without obtaining a warrant.  Plaintiff
then filed a lawsuit alleging, in part, a violation of his Fourth
Amendment rights. Id.  The district court granted summary judgment
on this claim, and plaintiff appealed. Id.

In affirming the decision of the district court, the Ninth
Circuit found that plaintiff could not have suffered an invasion of
privacy, because he did not live on the property. Schneider, 28
F.3d at 91-92 (explaining the "open field" doctrine).  As the
plaintiff had no reasonable expectation of privacy, a warrant was
not required. Id. at 92.  Instead, the court found that the
abatement hearing was sufficient to establish the validity and
reasonableness of the seizure. Id.

If the seizure of personal property without a warrant was
upheld in Schneider, it must be upheld in this case, where Caldwell
obtained a warrant from a neutral judicial officer. Id. at 91.

Moreover, plaintiff was provided the opportunity to challenge the nuisance citations, and the abatement proceedings sufficiently established the reasonableness of the seizure. Id. at 91-92.

Accordingly, the entry onto plaintiff's property and the seizure of his personal property did not violate the Fourth Amendment's restrictions on unreasonable searches and seizures as a matter of law.

2. Equal Protection Claim

Plaintiff also alleges that his equal protection rights were violated as a "class of one." The Equal Protection Clause ensures that "all persons similarly situated should be treated alike," City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985), and protects not only groups, but individuals who constitute a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Where state action does not implicate a fundamental right or a suspect classification, plaintiff can establish a class of one equal protection claim by demonstrating that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

Here, it is undisputed that the City and Caldwell have legitimate interests in the enforcement of City nuisance ordinances. Although plaintiff argues that Caldwell's actions were motivated solely by malice, plaintiff fails to offer any evidence -

11  - OPINION AND ORDER

other than conclusory statements - that he was treated differently than other citizens subject to the same code provision, or that the enforcement action was unrelated to the stated objective of abating the nuisance.

For example, plaintiff claims that Caldwell told him that "he faced the risk of losing his property . . . that it could become very painful." At his deposition, Caldwell explained:

> I told him that we were becoming upset, distressed by the lack of progress, and that he was faced with substantial fines, faced with the risk of losing his property, that it could become very painful if he didn't come into compliance on it. And I tried to impress on him how serious the matter was, that it was not trivial in any way, that he really needed to come into compliance.

Declaration of Larry Caldwell, Ex. 2, p. 2. I find that Caldwell's statements do not establish malice or an improper motive as opposed to an attempt to explain that non-compliance with the abatement order would result in serious consequences.

Assuming that plaintiff's interpretation of Caldwell's statement are accepted, plaintiff nonetheless fails to meet his burden of establishing an improper motive. It is undisputed that plaintiff evinced an unwillingness to abate the nuisance on his property after repeated efforts by Caldwell to gain compliance, and that Caldwell ultimately took action to enforce the City's code requirements. As noted by defendants, "[t]he City is not required to take a casual approach to remedial efforts to bring property owners into compliance with general standards of decency; it is

only required to treat people equally in the enforcement of valid nuisance laws." Defendants' Reply Memorandum, p. 3. Plaintiff thus fails to establish a violation of his process equal protection claim.

### 3. Due Process Claim

Finally, plaintiff claims that he was not afforded procedural due process before defendants seized and ultimately disposed of his property. At a minimum, due process requires that deprivation of life, liberty or property be preceded by notice and opportunity for a hearing to be conducted at a meaningful time in a meaningful manner. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); Mathews v. Eldridge, 424 U.S. 319, 333 (1976). In addition, "the [City] may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Logan, 455 U.S. at 434.

I find that plaintiff was afforded due process prior to the seizure of his property. Plaintiff repeatedly received notice of the nuisance citation and abatement action, through personal service and postings on his property. Further, plaintiff had the opportunity to protest the nuisance designation, request a hearing, and ultimately seek judicial review. Even though plaintiff was in custody when Caldwell finally obtained a warrant authorizing the abatement, he was served with notice of abatement at least twice. Plaintiff admits that despite being in jail, he could have made

13   - OPINION AND ORDER

contact with relatives in the area to monitor the abatement process. Thus, I find that more than one year of notice, combined with multiple opportunities to be heard, constitutes constitutionally sufficient process with respect to the seizure of plaintiff's property. Schneider, 28 F.3d at 93 (seizure of vehicles did not violate the plaintiff's right to due process because the "County Abatement Board held an appeal hearing at which [the plaintiff] presented evidence, testified, and cross-examined county officers").

The remaining question is whether the subsequent disposal of plaintiff's personal property violated his due process rights.

Although the Ninth Circuit upheld the seizure of vehicles in Schneider, it also found that the subsequent destruction of the vehicles without notice or the opportunity to be heard constituted a violation of due process. Id. at 93. The court explained that while the County's code provided for the disposal of vehicles that had been declared nuisances, the plaintiff's vehicles had not been so designated. Rather, the location and number of vehicles was deemed a nuisance and abated when the vehicles were seized and removed. Id. Consequently, the court found that the County was bound by its code, which did not authorize the destruction of vehicles that had not been designated as nuisances. Id.

Construing all facts in favor of plaintiff, he did not receive notice that his personal property would be recycled, sold, or

14  - OPINION AND ORDER

otherwise disposed of after its removal from the Germond property. Further, as in Schneider, defendants identify no Municipal Code provision that authorizes or governs the disposal of property seized during a nuisance abatement action.  Instead, defendants argue that Schneider does not address whether due process requires notice and opportunity for hearing prior to the disposal of property deemed to be a nuisance.

Accordingly, I apply the three-factor Mathews balancing test to identify the "specific dictates of due process" applicable here: 1) the private interest affected by the official action; 2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value of additional or substitute procedures; and 3) the government's interest, including the fiscal and administrative burdens imposed additional or substitute procedural safeguards.  Mathews, 424 U.S. at 335.

Plaintiff has a possessory interest in his personal property that is protected by the Oregon criminal code and through common law remedies for conversion.  While defendants characterize plaintiff's property as "debris and junk," such a characterization raises questions of fact that cannot be resolved on summary judgment.

Further, the risk of erroneous deprivation and the probable value of additional procedural safeguards favor plaintiff.  Though plaintiff made no effort to abate the nuisance and was repeatedly

15  - OPINION AND ORDER

told that his possessions would be removed from the Germond property, plaintiff was not informed that he would be permanently deprived of his property or given the opportunity to reclaim it. Additional safeguards - such as a provision in the Municipal Code regarding the disposal of nuisance property or notice to plaintiff that his property would be sold, recycled, or discarded - would lessen the risk of erroneous deprivation. Finally, the administrative burden of additional procedural safeguards such as those described above need not be prohibitive.

The court recognizes and appreciates defendants' efforts to provide plaintiff with notice of the abatement action and gain his compliance, given plaintiff's refusal to cooperate. However, the fact remains that defendants did not inform plaintiff that his property would be permanently disposed of after its removal, nor was he given the opportunity to reclaim his property. Accordingly, under Schneider and the Mathews balancing test, I cannot find - as a matter of law - that plaintiff's due process rights were not violated.

The next question is whether clearly established law rendered it unreasonable for Caldwell to rely on the notice give during nuisance abatement proceedings before authorizing Heartwood Resources to dispose of plaintiff's property. See Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (government officials are entitled to qualified immunity unless they have been given "fair notice"

16  - OPINION AND ORDER

that their conduct was unreasonable "in light of the specific context of the case.") (per curiam) (quoting Saucier, 533 U.S. at 201); see also Wong v. City & County of Honolulu, 333 F. Supp. 2d 942, 956 (D. Haw. 2004) ("[T]he question before the Court is whether, in light of clearly established law, reasonable officers could have believed that the removal and immediate disposition of motorcycles without notice without notice or pre- or post-deprivation hearings was lawful[.]").

> "Clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (internal citations and quotation marks omitted).

Several courts have held that vehicles may not be disposed of permanently without providing adequate process, and defendants here provided plaintiff with the sufficient process with respect to his vehicles. See Schneider, 28 F.3d at 93 ("Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause."); Wong, 333 F. Supp. 2d at 957; see also Harris v. County of Riverside, 904 F.2d 497, 503 (9th Cir. 1990). However, no precedent requires notice and the opportunity to be heard prior to

17  - OPINION AND ORDER

the disposal of personal property seized during an abatement action and deemed a nuisance.  "[B]ecause procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks and citations omitted).

Moreover, during the year-long process, Caldwell repeatedly attempted to gain plaintiff's voluntary compliance and asked for consent to abate the nuisance.  Caldwell also gave notice to plaintiff on numerous occasions that his personal property and all debris on the Germond lot would be removed during the abatement action.  Further, Caldwell gave plaintiff several opportunities to remove property he deemed valuable.  For example, Caldwell personally contacted plaintiff and told him to place valuable items in his trailer and offered to tow the trailer and store it for him. Finally, during the actual abatement, Caldwell and Heartwood Resources sorted through plaintiff's personal property and placed items thought to be valuable on a flat-bed trailer.

Given pre-existing law, I cannot find that Caldwell was given fair notice that his conduct was unreasonable or unlawful in these circumstances.  Rather, I find that a reasonable official in Caldwell's position would believe that his actions comported with

plaintiff's due process rights in light of the numerous efforts to give notice, gain plaintiff's compliance, and preserve plaintiff's property that appeared valuable. Therefore, even if the disposal of his personal property violated plaintiff's due process rights, Caldwell is entitled to qualified immunity.

Finally, plaintiff claims that Heartwood Resources is likewise liable under § 1983 because it acted under the color of law when it disposed of plaintiff's property. See Thorne v. City of El Segundo, 726 F.2d 459, 472 n.11 (9th Cir. 1983) (an entity acting on a city's behalf in exchange for payment may constitute action under the color of law). Even if Heartwood Resources was acting under the color of law, it is entitled to qualified immunity for the same reasons as explained with respect to defendant Caldwell.

CONCLUSION

Defendants' Motion for Summary Judgment (doc. 19) is GRANTED. IT IS SO ORDERED.

Dated this *14* day of December, 2008.


_____
            Ann Aiken
United States District Judge